UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOHEN DIALLO E. UHURU,<br><br>                              Petitioner,<br><br>v.<br><br>ROBERT BURTON, Warden, et al.,<br><br>                              Respondents. | Case No. 3:21-cv-01058-CAB-JLB<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**<br><br>**(2) DENYING CERTIFICATE OF APPEALABILITY** |

**I. INTRODUCTION**

Petitioner Kohen Diallo Uhuru ("Petitioner" or "Uhuru") is a state prisoner proceeding pro se with an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."). Uhuru challenges his conviction for murder in San Diego Superior Court case no. SCD123050. The Court has read and considered the Petition, [ECF No. 12], the Answer and Memorandum of Points and Authorities in Support of the Answer [ECF No. 20, 20-1], the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court **DENIES** the Petition and **DISMISSES** the case with prejudice. The Court also **DENIES** a Certificate of Appealability.

///

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

Uhuru and the victim, Cheri Washington, had a dating relationship which Washington ended. Lodgment No. 1, ECF No. 21-1 at 7. Three days before her murder, Washington had a phone conversation with her friend, Nancy Parker. *Id.* During the conversation, Uhuru rang Washington's doorbell; Washington put the phone down and went to answer the door. *Id.* at 8. Parker could hear Washington say she did not want to see him. *Id.* When she got back on the phone with Parker, Washington was "upset" and "nervous," and told Parker Uhuru had threatened her, saying that if she "acted like a bitch, he would treat her like a bitch." *Id.* at 10. Washington told Parker that "if anything happened, [to] call the police." *Id.*

The day before Washington's murder, she contacted a leasing agent named Keely Jackson by phone to obtain Uhuru's address in order to serve him with a restraining order. *Id.* at 16. According to Jackson, Washington was "very upset," and was "crying a little bit." *Id.* Although Washington was pleading with her, Jackson would not give her the information she sought. *Id.* 17–18. After ending the phone call with Washington, Jackson then called Uhuru and told him Washington had called and was trying to get information about his address to serve him with a restraining order. *Id.* at 18–19.

Early in the morning of August 21, 1986, San Diego Police Officer Ernest Herbert responded to a domestic violence call at 11838 Paseo Lucido, apartment number 54. *Id.* at 22–23. When he arrived, he found Washington at the bottom of the apartment steps with a gunshot wound to her head. *Id.* 23–24. Herbert went inside the apartment to get a small

---

[1] This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). Because Uhuru pleaded guilty in state court, the facts are taken from the transcript of the preliminary hearing, to which Uhuru stipulated as the basis for his guilty plea. Lodgment No. 2, ECF No. 21-2 at 11; Lodgment No. 1, preliminary hearing transcript, ECF No. 21-1.

child who he had been told might be inside. *Id.* at 24–25. Homicide detective Deanna Warrick later arrived on the scene. *Id.* at 27. She found several "missile fragments" on the landing and evidence of a struggle inside the apartment. *Id.* at 29–33.

About eight or nine hours after Washington was murdered, Lacy Hawkins, a pastor in Union City, California, was shot in the face. *Id.* at 43. Homicide detective John Tefft interviewed Hawkins, who identified Uhuru as the shooter but also said he knew him by the name of Earl Simms. *Id.* at 44. Tefft also interviewed a witness to the shooting, Ruben Santiago, who told Tefft he and other parishioners were able to restrain Uhuru after the shooting until police arrived. *Id.* at 45. The gun used in the shooting was later found by police and impounded. *Id.* at 59. John Cristinziani, a homicide investigator for the San Diego Police Department, examined the gun used in the Hawkins shooting and determined it was the same gun used to murder Washington. *Id.* at 60–61.

On February 2, 2000, Uhuru pleaded guilty to second degree murder, a violation of California Penal Code § 187(A), and admitted he personally used a firearm in the commission of the offense, within the meaning of California Penal Code § 12022.5(A)(1). Lodgment No. 2, ECF No. 21-2 at 5–7.[2] He was sentenced to twenty-five years to life in prison. Lodgment No. 2, ECF No. 21-2 at 7. Uhuru did not appeal his conviction.

On August 16, 2019, Uhuru filed a petition to be resentenced pursuant to California Penal Code § 1170.9 in San Diego superior court. Lodgment No. 4, ECF No. 21-4 at 161–66. The superior court denied the petition on August 21, 2019. *Id.* at 180–82. He appealed the trial court's decision, and on December 11, 2020, the California Court of Appeal affirmed the denial of his California Penal Code § 1170.9 claim. Lodgment Nos. 5–10, ECF Nos. 21-5–21-10. He then filed a petition for writ of habeas corpus in the California Supreme Court, which the court summarily denied. Lodgment Nos. 11–12, ECF Nos. 21-11–21-12.

---

[2] Uhuru pleaded no contest to attempted murder and assault with a firearm in a separate prosecution for the Hawkins shooting and was sentenced to twelve years in prison. Pet., ECF No. 12 at 76-78.

## III. ANALYSIS

### A. Legal Standard

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. See *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the

higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B. Discussion

Uhuru's Petition is not easy to understand. As best as this Court can discern, in ground one, Uhuru claims his guilty plea was coerced and involuntary because he was never advised of the intent element of second degree murder, the crime to which he pleaded guilty. Pet., ECF No. 12 at 5. He also appears to argue that his petition for resentencing pursuant to California Penal Code § 1170.95 was improperly denied. *Id.* In ground two, he argues the state court improperly considered for sentencing criminal counts that were dismissed as part of his guilty plea agreement, in violation of his *Harvey* waiver,[3] that he has stated a claim under the Americans with Disabilities Act ("ADA"), and that evidence of his mental illness and substance abuse was improperly suppressed. *Id.* at 7. In ground three he claims that he was "a mentally disordered offender (MDO) who committed a crime during 'temporary insanity' from being under severe stress" and that the trial court did not consider this as a mitigating factor. *Id.* at 8. The basis for ground four is not clear. Uhuru notes that "[t]he mentally disordered offender law applies only to prisoners whose crimes were committed after January 1, 1986," and also references the United States Supreme Court's decision in *Brown v. Plata*, 563 U.S. 493 (2011), which affirmed a lower court's

---

[3] A *Harvey* waiver allows a court to consider the facts underlying dismissed counts for the purposes of sentencing. *People v. Harvey*, 25 Cal. 3d 754, 758 (1979).

determination that California prisoners' Eighth Amendment rights to medical and mental health care were being violated by overcrowding in California's prisons. *Brown*, 563 U.S. at 545. But he does not appear to connect those concepts to his case or make any specific claim of error.

Respondent argues that none of the grounds raised in the Petition are cognizable on federal habeas corpus review under *Tollet v. Henderson*, 411 U.S. 258 (1973) which bars a petitioner from raising claims relating to constitutional violations which occurred prior to the entry of guilty plea. Answer, ECF No. 20-1 at 7–9. In the alternative, Respondent argues that ground one is unexhausted, and, in any event, fails to state a federal question, that ground two is unexhausted and meritless, and the state court's denial of grounds three and four was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Id.* at 9–11.

1. Whether Uhuru's Claims are Barred by *Tollett v. Henderson*

In *Tollett*, the Supreme Court held that once a defendant has entered a valid guilty plea, he is barred from challenging any constitutional violations which occurred prior to the plea in a federal petition for writ of habeas corpus; he may only argue that his guilty plea was not voluntary and intelligent because counsel was ineffective. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Tollett*, 411 U.S. at 266–67. As the *Tollett* Court noted,:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett*, 411 U.S. at 267; *see also Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) (holding that "[a]s a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"), *overruled on other grounds in Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003).

///

In ground two, Uhuru alleges the trial court violated the terms of his *Harvey* waiver and evidence of his mental illness and substance abuse was suppressed and in ground three, he alleges that at the time of the crime he was a mentally disordered offense who was temporarily insane when he committed the crime. Pet., ECF No. 12 at 7–8. These are claims of errors which occurred prior to his guilty plea, and they may not be raised in a federal habeas corpus petition. *Hill*, 474 U.S. at 56; *Tollett*, 411 U.S. at 266-67. Although it is not entirely clear what claim Uhuru seeks to raise in ground four, it is not a claim of ineffective assistance of counsel resulting in an involuntary guilty plea and thus whatever claim is does seek to raise with regard to how California's mentally disordered offender statute applies to Uhuru is also barred by *Tollett*. *Tollett*, 411 U.S. at 266–67. In any event, grounds two and three are meritless, as discussed below.

In ground one, however, though Uhuru does not allege counsel was ineffective, he does allege, in part, that his guilty plea was "coerced under duress" because he was not told that in order to be convicted of second degree murder, the prosecution would have had to prove he intended to kill. Pet., ECF No. 12 at 5. Interpreting Uhuru's claim liberally, as this Court is required to do, *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001), the Court concludes ground one is not barred by *Tollet* and will address the merits of this claim below.

### 2. Ineffective Assistance of Counsel, Involuntary Guilty Plea and Denial of Petition for Resentencing (Ground One)

As Respondent notes, the claims Uhuru raises in ground one appear to be unexhausted. The Court may nevertheless "deny an unexhausted claim on the merits where 'it is perfectly clear that the applicant does not raise even a colorable federal claim.'" *Cassett v. Stewart*, 406 F.3d 614, 623 (9th Cir. 2005).

The United States Supreme Court has held that "the two-part *Strickland v. Washington* test applies to challenges to guilty plea based on ineffective assistance of counsel." *Hill*, 474 U.S. at 58. *Strickland* requires a petitioner to establish that his attorney's performance fell below an objective standard of reasonableness. *Strickland v. Washington*,

466 U.S. 668, 688 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. He must also show he was prejudiced by counsel's errors. *Id.* at 694. Prejudice can be demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993). *Strickland* also requires "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686–87. The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Strickland*, 466 U.S. at 697. The Supreme Court has described the prejudice inquiry in cases where a petitioner claims his guilty plea was involuntary as a result of ineffective assistance of counsel as follows:

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.
>
> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. . . . [W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Id.* at 59.

Even assuming Uhuru's counsel's performance was deficient, Uhuru has not established he was prejudiced. Uhuru claims he "was not made aware that intent to cause death was an element of the offense." Pet., ECF No. 12 at 5. But this defense was not likely to succeed at trial. Evidence presented at the preliminary hearing established that the gun

8

used to shoot Hawkins was the same gun as that used to kill Washington. Lodgment No. 1, ECF No. 21-1 at 59–61. Hawkins identified Uhuru as the person who shot him. *Id.* at 44. Uhuru had a prior relationship with Washington that had become threatening and Washington was seeking a restraining order against Uhuru at the time she was murdered. *Id.* at 8–10, 16, 18–19. When police arrived at Washington's apartment, they found her with a gunshot wound to the head. *Id.* at 23–24. Given these facts, there is no likelihood that a defense based on a claim that Uhuru did not intend to cause death would have been successful at trial. *Hill*, 474 U.S. at 59.

Further, Uhuru has also failed to establish his guilty plea was involuntary independent of any claim of ineffective assistance of counsel. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Voluntariness is a question of law and must be demonstrated by tangible evidence in the record, considering the totality of the circumstances surrounding the plea. *Marshall v. Lonberger*, 459 U.S. 422, 431-32 (1983); *Brady v. United States*, 397 U.S. 742, 749 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A court reviewing the voluntariness of a guilty plea is entitled to give great weight to in-court declarations made by a defendant: "[T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

The transcript of the plea hearing and the guilty plea form Uhuru signed show he was advised of his rights to a "speedy and public trial by jury," the right to "confront and cross-examine all the witnesses against [him]," the right to remain silent, and the right to "present evidence on [his] behalf." Lodgment No. 2, ECF No. 21-2 at 5–9; Lodgment No. 3, ECF No. 21-3. He also assured the trial judge he wished to plead guilty, that he had read and understood the guilty plea form and the rights he was waiving by pleading guilty, and

that he had had enough time to talk to his attorney. Lodgment No. 2, ECF No. 21-2 at 5–9. Finally, he admitted that he had murdered Washington and that he had personally used a firearm while committing the crime. *Id.* at 13. Given the evidence in the record before the Court, Uhuru has not established his guilty plea was involuntary, and he is not entitled to relief as to this claim.

Uhuru also appears to argue in claim one that his request to be resentenced pursuant to California Penal Code § 1170.95 was improperly denied. Pet., ECF No. 12 at 6.[4] Because Uhuru's claim concerns solely a matter of state law, federal habeas corpus relief is not available. *Estelle v. McGuire*, 502 U.S. 62, 67, 68 (1991) (holding that federal habeas relief is not available for alleged violations of state law); *see also* 28 U.S.C. § 2254(a). In any event, California Penal Code § 1170.95 does not apply to Uhuru's case. The section reads, in pertinent part:

> (a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:
>
> (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

---

[4] Respondent states Uhuru "challenges the superior court's denial of his petition to be resentenced under California Penal Code § 1170.91. . . ." Answer, ECF No. 20-1 at 9. Uhuru refers to California Penal Code § 1170.95 in his Petition, however, not California Penal Code § 1170.91. *See* Pet., ECF No. 12 at 6.

> (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.
>
> (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019.

Cal. Penal Code § 1170.95.

The prosecution in Uhuru's case did not "proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." *Id.* In addition, Uhuru could "presently be convicted of murder" despite the changes to California Penal Code §§ 188 and 189 because he was the actual killer of Washington. *See People v. Cornelius*, 44 Cal. App. 5th 54, 58 (2020) (stating that the defendant was "convicted . . . of second degree murder and [admitted] that he personally and intentionally used a firearm to commit the crime" making him the 'actual killer,' and the changes to § 189 inapplicable). Thus, as the California appellate court noted in its Order upholding the superior court's denial of Uhuru's petition for resentencing, California Penal Code § 1170.95 does not apply to Uhuru's case. Lodgment No. 21-10; *see also Cole v. Sullivan*, 480 F. Supp. 3d 1089, 1097 (C.D. Cal. Aug. 19, 2020) (collecting cases noting California Penal Code § 1170.95 does not apply to cases where the defendant was the actual killer); *People v. Garrison*, 73 Cal. App. 5th 735, 745 (2021) (stating that a person convicted of being the actual killer is ineligible for relief pursuant to §1170.95.) He is therefore not entitled to relief as to this claim.

### 3. Violation of the *Harvey* Waiver, ADA Claim, and Suppression of Uhuru's Mental Illness and Substance Abuse (Ground Two)

In ground two, Uhuru claims he has "stated a claim under the ADA," that the *Harvey* waiver he agreed to as part of his plea agreement was violated, and there was "deliberate

suppression of Petitioner's mental illness and substance abuse." Pet., ECF No. 12 at 7. In *People v. Harvey*, 25 Cal. 3d 754 (1979), the California Supreme Court held that "[i]mplicit in . . . a plea bargain, we think, is the understanding (in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, [a] dismissed count." *Harvey*, 25 Cal. 3d at 758. As part of his plea agreement, Uhuru executed a *Harvey* waiver on his guilty plea form. Lodgment No. 3, ECF No. 21-3 at 3. Uhuru does not explain how the *Harvey* waiver was violated or what prejudice he suffered as a result. Moreover, his guilty plea was given in exchange for a stipulated sentence and thus the Court did not consider any dismissed counts in imposing the sentence. *Id.* Finally, there does not appear to be any charges that were dismissed as part of the plea agreement, and thus a *Harvey* waiver would not apply in any event. *See* Lodgment No. 4, ECF No. 21-4 at 8–9. The reference to "dismissing the balance" of charges on the guilty plea form appears to be in error. *See* Lodgment No. 3 at 1.[5] Accordingly, he is not entitled to relief as to his claim that his *Harvey* waiver was violated.

Uhuru's assertion that he has "stated an ADA claim" in ground two is not cognizable on federal habeas review. Challenges to the fact or duration of confinement are brought by petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254; challenges to conditions of confinement are brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 488–500 (1973); *Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016). When a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus. *Preiser*, 411 U.S. at 500; *Nettles*, 830 F.3d at 935. On the other hand, a

---

[5] Although a special circumstance allegation does not appear on the felony complaint document, at the plea hearing the prosecutor agreed to dismiss the special circumstance allegation. Lodgment No. 2, ECF No. 21-2 at 13. For the same reasons discussed above, however, this did not affect the sentence Uhuru received.

§ 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody. *Preiser*, 411 U.S. at 499; *Nettles*, 830 F.3d at 935.

Uhuru's assertion that he has "stated a claim under the ADA . . . with permanent disabilities of post-traumatic stress disorder; incontinence and enuresis; post-slavery syndrome [and] mental illness," *see* Pet., ECF No. 12 at 7, are not cognizable on habeas corpus review because they do not challenge the constitutional validity or duration of confinement but rather appear to seek redress for conditions of his prison life. *See* 28 U.S.C. § 2254(a); *Preiser*, 411 U.S. at 500; *Heck v. Humphrey*, 512 U.S. 477, 480-85 (1994); *Nettles*, 830 F.3d at 935. If Uhuru wishes to obtain relief for violations of the ADA in prison, he must file a separate civil rights action pursuant to 42 U.S.C. § 1983 which will be given a separate case number.[6]

As to Uhuru's claim that evidence of his mental illness and substance abuse were suppressed during his criminal proceedings, he provides no evidence in support of this contention. The claim consists of a conclusory allegation which cannot be the basis for federal habeas corpus relief. *Rogers v. Wong*, 637 F. Supp. 2d 807, 826 (E.D. Cal. March 26, 2009) (citing *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995)).

///
///
///
///
///
///

---

[6] Uhuru filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on December 28, 2004 in *Uhuru v. Khan*, S.D. Cal. case no. 3:04-cv-02574-JAH-WMC. A summons was issued in that case, but the case was eventually dismissed for failure to prosecute. *See* ECF Nos. 4, 10 in *Uhuru v. Khan, et al.*, S.D. Cal. case no. 3:04-cv-02574-JAH-WMC. Uhuru appealed the dismissal, but the Ninth Circuit affirmed the District Court's Order. *See id.*, ECF Nos. 19, 35.

### 4. Whether Uhuru Should Be Classified as a Mentally Disordered Offender and the Suppression of Mitigating Circumstances (Ground Three)

In ground three, Uhuru states that he "was a mentally disordered offender (MDO) who committed a crime during 'temporary insanity' . . . ." Pet., ECF No. 12 at 8. He also claims that the following "mitigating factors" were "never considered":

> severe stress without sleep from physically being on 3 different full time/permanent vocations night and day for 13 years compounded with 25 years employment as civil service employee causing suicidal ideologies with nervous breakdown from lack of mental health treatment & substance abuse treatment without detox and deprogramming from being in [a] religious cult . . . records of blackouts, walking around Mare Island Naval Shipyard 'naked' during his government employment; also post traumatic stress disorder (PTSD); post slavery trauma syndrome (PSTS); with biblical and Hebrew history of being possessed by evil and unclean spirits . . . .

*Id.*

It appears from the attachments to the Petition that Uhuru seeks to be designated a MDO so he can participate in the state's conditional release program. Pet., ECF No. 12 at 90–93. It is not clear that this claim is exhausted. Respondent notes that Uhuru "raised a similar claim in the habeas petition he filed in the state supreme court (Lod. 11), which was denied without comment (Lod. 12)." Answer, ECF No. 20-1 at 15. In any event, as this Court has already noted, the Court may "deny an unexhausted claim on the merits where 'it is perfectly clear that the applicant does not raise even a colorable federal claim.'" *Cassett v. Stewart*, 406 F.3d 614, 623 (9th Cir. 2005).

The MDO procedure in California prevents certain offenders from being released into the community at the end of their prison term. *See* Cal. Penal Code § 2963 (West 2022); *The California Prison and Parole Law Handbook*, Heather McKay and The Prison Law Office, Section 12-2 (2019). The California Department of Corrections and Rehabilitation ("CDCR") evaluates all prisoners in California for MDO eligibility. The California Prison and Parole Law Handbook, Heather McKay and The Prison Law Office, Section 12-2; *see also* Cal. Penal Code § 2963(a) ("Upon a showing of good cause, the

Board of Parole Hearings may order that a person remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to paragraph (1) of subdivision (d) of Section 2962 . . . .") In addition, "[a] prisoner may request a hearing before the Board of Prison Terms, and the board shall conduct a hearing if so requested, for the purpose of proving that the prisoner meets the criteria in Section 2962. *See* Cal. Penal Code § 2966(a). If an individual is found to be an MDO, he can involuntarily committed to an inpatient mental health facility as a condition of his parole. Cal. Penal Code §§ 2962, 2966(c), 2970, 2972; *People v. Blackburn*, 61 Cal. 4th 1113, 1122 (2017).

To the extent Uhuru is challenging the application of California's MDO law to him, he is not entitled to relief because it concerns solely the application of state law. *Estelle*, 502 U.S. at 67, 68; 28 U.S.C. § 2254(a). In any event, it is not clear from the documents Uhuru has filed that he has been denied MDO classification. An MDO determination occurs when a person nears the end of his prison term and is eligible for parole. Cal. Penal Code § 2963. Uhuru has provided a letter from the Board of Parole Hearings ("BPH") stating that Uhuru "ha[s] not been considered for MDO and ha[s] not had an MDO Certification Proceeding with the BPH" as support for his claim. Pet., ECF No. 12 at 143. But the letter does not state Uhuru will not be considered for MDO certification at the appropriate time in the future. Accordingly, Uhuru is not entitled to relief as to this claim.

As he did in ground two, Uhuru claims without evidence that mitigating evidence was suppressed during his criminal proceedings. He is not entitled to relief for this conclusory allegation. *Rogers*, 637 F. Supp. 2d at 826 (citing *Jones*, 66 F.3d at 204).

### 5. Ground Four

In ground four, Uhuru makes reference to the MDO law and *Brown v. Plata*, 563 U.S. 493 (2011), but he does not appear to state a claim for relief. Ground four reads as follows:

> The mentally disordered offenders law applies only to prisoners whose crimes were committed after January 01, 1986. The statutes governing the program are also contained in Penal Code (PC) section 2960–2981 which requires that

a prison meet six specific criteria for certification under Petitioner's forensic (MDO) "CONREP."

Pet., ECF No. 12 at 10.

In the section of ground four entitled "supporting facts," Uhuru states the following:

> Another division of this appellate district recently noted that the pendency of a related federal action challenging CDCR/BPH action "does not lessen" a California court's authority, and duty, to provided effective [habeas corpus] relief . . ." (In re Morales (2013) 212 Cal. App. 4th 1410, 1430, fn. 13 [152 Cal. Rptr. 3d 123].) In Loveton, supra, 244 Cal. App 4th at page 1045, courts noted, after a "cf." designation, the court's statement in Brown v. Plata, supra, 563 U.S. 493, "in the prison administration context, that [courts] must not shrink from their obligation to "enforce the constitutional rights of all prisoners, including 'persons.' Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration.

Pet., ECF No. 12 at 10.

*Brown* involved prison overcrowding in California prisons and violations of prisoners' Eighth Amendment rights to medical and mental health care. *Brown*, 563 U.S. 493. *Morales* invalidated race-based policies at California prisons. *Morales*, 212 Cal. App. 4th 1410. Uhuru has not alleged any facts related to the holdings in either *Brown* or *Morales*. Indeed, he has not stated any specific claim in ground four.

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (emphasis added).

Thus, to present a cognizable federal habeas corpus claim under § 2254, a state prisoner must allege both that he is in custody pursuant to a "judgment of a State court," and that he is in custody in "violation of the Constitution or laws or treaties of the United

States." *See* 28 U.S.C. § 2254(a). While courts should liberally interpret pro se pleadings with leniency and understanding, this should not place on the reviewing court the entire onus of ferreting out grounds for relief. *See Zichko*, 247 F.3d at 1020. This Court would have to engage in a tenuous analysis in order to attempt to identify and make sense of any claims in ground four. As it currently stands, Uhuru has failed to state a federal constitutional claim for which federal habeas corpus relief can be granted in ground four.

## IV. CONCLUSION

For the foregoing reasons, the Petition is **DENIED**. Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254 (West 2019). A COA will issue when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (West 2019); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005). A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court concludes Uhuru has not made the required showing, and therefore a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 9, 2022

_____
Hon. Cathy Ann Bencivengo
United States District Judge